EXHIBIT C



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/013,341 | 09/08/2014 | 7293385 | 80960.0001 | 2607 |

27804          7590          08/27/2015
HOLLAND & BONZAGNI, P.C.
171 DWIGHT ROAD, SUITE 302
LONGMEADOW, MA 01106-1700

| EXAMINER |
|---|
| FOSTER, JIMMY G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/27/2015 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

HOLLAND & HART

222 SOUTH MAIN STREET, SUITE 2200

P O BOX 11583

SALT LAKE CITY, UT 84110

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/013,341*.

PATENT NO. *7,293,385*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Office Action in Ex Parte Reexamination* | **Control No.**<br>90/013,341 | **Patent Under Reexamination**<br>7293385 |
|---|---|---|
| | **Examiner**<br>JIMMY G. FOSTER | **Art Unit**<br>3993 | **AIA (First Inventor to File) Status**<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☒ Responsive to the communication(s) filed on *22 July 2015* .

     ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☐ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire *2* month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.

2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION

1a. ☒ Claims *2-9 and 11-14* are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☒ Claims *1 and 10* have been canceled in the present reexamination proceeding.

3. ☒ Claims *3,7 and 11-15* are patentable and/or confirmed.

4. ☒ Claims *2,4-6,8 and 9* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

     a) ☐ All  b) ☐ Some* c) ☐ None     of the certified copies have

     1 ☐ been received.

     2 ☐ not been received.

     3 ☐ been filed in Application No. _____ .

     4 ☐ been filed in reexamination Control No. _____.

     5 ☐ been received by the International Bureau in PCT application No. _____.

     * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____.

cc: Requester (if third party requester)

Application/Control Number: 90/013,341                                                  Page 2
Art Unit: 3993

The present application is being examined under the pre-AIA first to invent provisions.


## Introduction

1)      On July 22, 2015 Patent Owner submitted a response to the non-final action mailed May 22, 2015.  The response includes, among other things, a claim amendment, Remarks, Declarations by Seth K. Bredbury and Jack R. Biegel under 37 CFR 1.132, copies of certain Federal Circuit decisions, and a copy of a 2013 deposition by Michael L. McCormick, the patentee/inventor.  The recent Declaration by Jack R. Biegel is the declarant's second in this reexamination proceeding and presents additional facts in support of the patentee's earlier filed declaration submitted under 37 CFR 1.131.  The Declaration by Seth K. Bredbury (which also is that declarant's second) and the Remarks address rejections that were made in the previous Office action.


## Examination

2)      The following is a quotation of 35 U.S.C. § 103(a) (Pre-AIA) which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the invention was made.

3)      Claims 2 and 4 are rejected under 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent No. 4,671,005 to Jewell in view of U.S. Patent No. 3,707,796 to Bielfeldt.

Claims 2 and 4 are to a trigger group module *for* a firearm.  Accordingly, the trigger group module is structurally set forth in claims 2 and 4, whereas the firearm in these claims is read not as *structure* but as *intended use*.  Therefore, the recitations in

claims 2 and 4 of the _locations_ of the module or module's components relative to the firearm merely define _functional limitations_ related to that _intended use_.

MPEP 2114 essentially addresses how _function/intended use_ (i.e., a non-structural limitation) is examined in relation to the prior art. Function is met by the capability of the prior art to perform the function, even if there is no disclosure of the function ever being performed. Moreover, a reasonable rationale of how a function can be performed is sufficient for meeting the functional limitation.

The functional limitations in claims 2 and 4 regarding locations in relation to a firearm do not distinguish the claimed subject matter over the ability of the structure of Jewell's module (and modified forms thereof in view of the other applied art) to achieve such locations in a firearm. With regard meeting to the intended use, there is no requirement that the firearm exist in the prior art, but only that it can exist. Thus, the functions defined by the _locations_ of the structure in the claims in relation to a firearm need only be capable of being performed with respect to a hypothetical firearm. Stated differently, it is only necessary that the present rejection sufficiently indicate how the claimed location(s) can be commonly achieved by the module of Jewell in a firearm, in addition to indicating how the module limitations are present in Jewell's module (or an obvious modified version thereof).

**It is to be understood that the limitations from canceled claim 1 are effectively a part of patent claims 2 and 4 based on dependency. They are being considered as follows.**

**(From Canceled Claim 1)**

Jewell discloses a trigger group module (trigger assembly 10) for a firearm (e.g., a rifle) of a type having a receiver that defines a trigger group receiving area between first and second receiver side walls. Jewell shows a firearm receiver that is formed in the stock (16) of a firearm (see Fig. 1) and that defines a trigger group receiving area between first and second receiver side walls (see Fig. 2), within which the module would be received.

Application/Control Number: 90/013,341                                     Page 4
Art Unit: 3993

    Jewell further discloses a module housing (housing 26), which is adapted to be inserted to an operating position in such trigger group receiving area, as shown in Figs. 1, 2 (see also col. 3, lines 64- 65).

    Jewell additionally discloses a number of trigger group components mounted within the module housing.  These components include an arm lock means (20), a trigger piece (22), and a link mechanism (24) (see col. 4, lines 1-3).

    Jewell also discloses a first pin receiver positioned in the module housing so as to align with first pin receptacle openings of a firearm when the module housing is in an operating position.  Jewell's first pin receiver in the module housing (26) is substantially defined by an opening or an aperture in each of the housings walls, through which a pin (30) passes.  As demonstrated, this pin receiver would be capable of being positioned for aligning with opposed pin receptacle openings of a firearm when the module housing (26) is in a position within a firearm's receiver (see annotated versions of Figs. 2, 4 below), by which to permit the pin receptacle openings of the firearm to function as pin support surfaces in the firearm's receiver side walls.

*(Fig. 2, with added notation by the Examiner taken from the Reexam Request)*



(Fig. 4, with added notation taken by the Examiner from the Reexam Request)





Jewell further discloses a first module pin mounted in the first pin receiver in the module, on which a trigger group component is supported in the module housing.  As evident in Figure 1 (see above), Jewell has one of its trigger group components (i.e., an arm lock means/arm lock 20) supported in the module housing (26) about a module pin (30).  The pin is received in a pin receiver (the openings in the module side walls; see annotated Fig. 2).

Also present is a pin-receiving sleeve that receives the pin (30) therein (again see Figs. 1 and 2).  This is also described by Jewell's specification (see col. 4, lines 4-5): "The arm lock means 20 is pivotally mounted to a housing 26 on a sleeve about pin

Application/Control Number: 90/013,341                                    Page 6
Art Unit: 3993

30 ...." This passage would tend to indicate that the <u>sleeve</u> also defines a component-supporting pin. Jewell further discloses the following regarding the sleeve being connected (in some manner) to the housing (see col. 6, line 67 - col. 7, line 7):

> *Even if removal of the trigger assembly 10 is necessary (see FIGS. 1 and 2), removal of the pin 30 allows the entire trigger assembly to be quickly removed from the rifle 12.* **That is, a sleeve connects the lock arm 20 to the housing 26, the pin 30 passes through the sleeve to connect the housing 26 to the stock 16.** *The rear portion of the housing 26 is supporting in the stock by a lip. Thus, removal of pin 30 allows removal of the entire trigger assembly 10. (Examiner's emphasis)*

However, it should be noted that Jewell's Figures 3 and 4, although tending to indicate that pin (30) is physically mounted in the receiver openings in the module's housing wall, fail to show that a pin receiver opening also mounts therein the pin-receiving sleeve. Its specification also does not describe such a structural relationship. Therefore, even if the unnumbered sleeve itself would reasonably qualify as a module pin in Jewell, the pin's disclosed location fails to meet (for it) the limitation that calls for a first module pin to be mounted <u>in</u> the first pin receiver.

Accordingly, Jewell by itself fails to disclose a first module pin that both (1) has an opening for alignment with the pin receptacle openings of the firearm and (2) is mounted in a first pin receiver positioned in the module's housing. Instead, Jewell has a pin (30) mounted in a pin receiver opening (in the housing; see Fig. 4) but not itself having an opening, and Jewell further has an unnumbered sleeve having an alignable opening, which even if it is determined to define a pin and connect a component to the housing, is nonetheless not mounted in a pin receiver (which is positioned in the module housing).

Nonetheless, it is suggested in the trigger mechanism art to make a component-mounting pin <u>hollow</u> that also functions as a <u>bolt</u>. More specifically, Bielfeldt suggests, to one of ordinary skill in the art, to pivotally mount a trigger sear (indicated with the number 21) on a "fixed pin or bolt 27" (see col. 3, lines 52-55), and Bielfeldt's Figure 1 tends to show that this fixed pin or bolt 27 is hollow. The trigger mechanism includes components 12, 21, 30 located between housing plates (see col. 3, lines 20-23). The

description of the mounting element 27 as a "bolt" implies that the element may at least connect the trigger sear (pivotally) to one of the housing plates 10.  Moreover, the term "bolt" would tend to suggest that the connection is made by extending it into or through an opening.  The term would thus suggest to the artisan that a bolt 27 is mounted in an opening in at least one housing plate 10 (in the Examiner's opinion).

Moreover, the sear in Bielfeldt is disclosed as being pivotally mounted at one end, and Figures 1 and 2 show the sear overlapped with one of the housing plates. Requester (12/16/2014 Reply, p 8) has argued the following:

> *Further, given that the assembly of Bielfeldt is shown and described as a self- contained assembly, and is not dependent on the firearm to maintain the characteristics of the assembly (e.g., the location and pivoting nature of sear or other trigger components), it is clear that the sear (21) is mounted to the plates (10) by way of the pin/bolt (27) (i.e., the pin/bolt being attached to the plates) in order for the sear to be able to pivot within the assembly.*

The Examiner continues to find the argument persuasive.  The artisan would understand from Bielfeldt that the pivotal mounting of the sear is *to a housing plate* via the bolt.  Furthermore, the characteristic of mounting a supporting pin in both opposed plates of a housing is already within the ordinary skill in the art (see Jewell regarding mounting pin (30)).

Requester has cited judicial support for considering that combining "familiar elements according to known methods is likely to be obvious when it does not yield more than predictable results, and that altering the prior art by the mere substitution of one element for another known in the field, yields no more than a predictable result (see 9/8/14 Request for Reexamination, p 31).  Based on this argument, Requester has further argued that the substitution of the pin or bolt (27) of Bielfeldt for the unnumbered sleeve of Jewell would yield the predictable result of permitting removal the entire trigger assembly (10) of Jewell from the firearm, while managing to retain the lock arm means (20) in a pivotally mounted relationship with the housing (26) even after removal of the pin (30).

Requester has additionally argued that one of ordinary skill in the art would be motivated to replace such a sleeve of Jewell with the "pin or bolt 27" of Bielfeldt, which

pivotally mounts a similar component to a similar housing, so as to retain Jewell's lock arm means (20), the spring (36) and the block (62) (and, possibly, other components) in their assembled order within the housing (26) even after the assembly has been removed from the firearm.

The Examiner agrees. Accordingly, for these reasons as argued by Requester, it would have been obvious to one of ordinary skill in the art, in view of Bielfeldt, to have replaced the unnumbered sleeve of Jewell with a hollow bolt and, moreover because the replaced hollow element constitutes a bolt, to have connected it (the bolt) in the opening in the housing's (26) plate.

With regard to the limitation (from claim 1) "the module housing having a lower extremity that is located above a lowermost edge of the first receiver side wall and a lowermost edge of the second receiver side wall when the module housing is in the operating position", Jewell meets such a <u>functional limitation</u>.  More specifically, the firearm in claim 1 defines *intended use* in the claim, and the recitation of the position of the module in the firearm is therefore one that is functional.  Jewell meets the limitation merely because Jewell's trigger assembly, including the module housing 26 thereof, is capable of being placed in a hypothetical firearm that would be much like what Jewell shows regarding a rifle, but wherein the rifle's receiver is instead configured slightly differently so that the lowermost edges of the side walls of the rifle's receiver would extend beyond the module housing's (26) lower extremity when the module's pin is connected in the rifle's receptacle openings.  Furthermore, Jewell, even when it is modified as explained herein in view of Bielfeldt, would remain capable of meeting the limitation regarding the module's lower extremity.  Using a hollow bolt as a sleeve in Jewell in view of Bielfeldt would not result in preventing installing the modified Jewell module in a firearm having side walls that extend below the extremity of the module.

**(Claim 2)**

Regarding the additional limitations set forth in claim 2, Jewell of the art combination discloses a second pin receiver in the form of a second opening for a second pin (30).  See Figure 4.



As with the limitations in the independent claim 1 (which is a canceled patent claim), the firearm is set forth in the claim as *intended use,* and the claim recitation regarding alignment of the second pin receiver with second pin receptacles of the firearm constitutes a functional limitation.  Jewell meets the functional limitation regarding alignment because its module is capable of being received in a hypothetical rifle similar to that shown by Jewell but further slightly different by having second receptacle openings that define pin supporting openings that would align with Jewell's second pin receiver (i.e., while the first receptacle openings are aligned by the first receiver opening and while the lowermost edges of the receiver side walls extend below a lower extremity of the housing side walls).

    **(Claim 4)**

       As with claim 2, the recitation of the firearm is one of *intended use*. Hypothetically, it would be possible to have a firearm that is constructed much like that shown in Jewell but that further includes an *actuator* connected to the firearm, to be accessible on the outside of the firearm's body and to extend into the receiver for the

Application/Control Number: 90/013,341                                        Page 10
Art Unit: 3993

module, whereby a particular actuated position of the actuator would function to prevent moving of the link 94 of Jewell from a locking position thereof (e.g., shown in Figure 4), and thus prevent a firing of the firearm.  Because such structure would be possible, claim 4's intended use fails to patentably distinguish the claimed subject matter over that art combination which is applied to claim 2.

4)      Claims 5, 8 and 9 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Jewell in view of Bielfeldt, U.S. Patent No. 5,904,132 to Biller and U.S. Patent No. 2,514,981 to Walker et al (Walker).

       **(Claim 5)**

       Claim 5 sets forth the recited firearm in a structural manner in combination with the module.

       Jewell discloses a firearm (rifle 12).  The firearm has a receiver formed in the stock (16)(see Fig. 1).  The receiver defines a trigger group receiving area between a first receiver side wall and a second receiver side wall (see Fig. 2).  Although Jewell apparently discloses a bolt receiver (not shown, see col. 3, lines 65-68), the term "receiver" is interpreted in this reexamination proceeding as being the portion of the firearm that houses the firearm's operating parts, including the bolt and the trigger group.  Accordingly, the *receiver* in Jewell is the combination of the bolt's receiver and also the cavity that receives the housing 26.  See annotated Figure 1, below.

       Each of the first and second receiver side walls includes a first pin receptacle opening, which functions to define a pin support surface.  Figure 2 shows the receptacle openings of the firearm supporting a pin (30).

       *(Fig. 2, with added notation by the Examiner taken from the Reexam Request; Fig 1 without annotation)*

Application/Control Number: 90/013,341                                    Page 11
Art Unit: 3993



Jewell further discloses a module housing (housing 26) located in an operating position in the trigger group receiving area of the firearm (as shown in Figs. 1, 2; see col. 3, lines 64-65).

Jewell additionally discloses a number of trigger group components mounted within the module housing, including an arm lock means (20), a trigger piece (22), and a link mechanism (24) components (see col. 4 lines 1-3; Fig. 1).

*(Fig. 4, with added notation taken by the Examiner from the Reexam Request)*

Application/Control Number: 90/013,341                                    Page 12
Art Unit: 3993



Jewell further discloses a first pin receiver positioned in the module housing and aligning with the first pin receptacle openings of the firearm (see Figs. 2, 4).  Jewell includes a first pin receiver in the module housing (26), substantially defined by an opening/aperture in each of the housing walls through which a pin (30) passes (see Fig. 3).  As shown (see Fig. 2), the pin receiver is positioned so as to align with the first pin receptacle openings of the firearm while the module housing (26) is in the operating position.  In this position the first pin receptacle openings of the firearm are to define pin support surfaces formed in the first receiver side wall and the second receiver side wall.

Jewell further discloses a first module pin mounted in the first pin receiver.  As evident in Figure 1, Jewell has a trigger group component (i.e., an arm lock means/arm lock 20) supported in the module housing about the pin (30) which is received in a pin receiver.  Also present is a pin-receiving sleeve that receives the pin (30) therein (again see Fig. 1).  This is also described by Jewell's specification (see col. 4, lines 4-5):  "The arm lock means 20 is pivotally mounted to a housing 26 on a sleeve about pin 30 …."  This passage would tend to indicate that the sleeve also defines a component-supporting pin.

Jewell further discloses the following regarding the sleeve being connected (in some manner) to the housing (see col. 6, line 67 – col. 7,  line 7):

> *Even if removal of the trigger assembly 10 is necessary (see FIGS. 1 and 2), removal of the pin 30 allows the entire trigger assembly to be quickly*

*removed from the rifle 12. That is,* **a sleeve connects the lock arm 20 to the housing 26, the pin 30 passes through the sleeve to connect the housing 26 to the stock 16.** *The rear portion of the housing 26 is supporting in the stock by a lip. Thus, removal of pin 30 allows removal of the entire trigger assembly 10. (Examiner's emphasis)*

However, it should be noted that Jewell's Figures 3 and 4, although tending to indicate that pins (30) are physically mounted in the pin receiver openings in the module's housing wall, fail to show that a pin receiver opening also mounts therein the pin-receiving sleeve.  Therefore, even if the unnumbered sleeve itself would reasonably be defined as a module pin, its disclosed location fails to meet (for it) the claim 5 limitation that calls for the first module pin to be mounted <u>in</u> the first pin receiver.

Accordingly, Jewell by itself fails to disclose a first module pin that *both* (1) has an opening for alignment with the pin receptacle openings of the firearm and (2) is mounted <u>in</u> a first pin receiver positioned in the module's housing.  Instead, Jewell has a pin (30) mounted in a pin receiver opening (in the housing; see Fig. 4) but not itself having an opening, and Jewell further has an unnumbered sleeve having an alignable opening, which even if it is determined to define a pin, is nonetheless not disclosed as mounted <u>in</u> a pin receiver (which is positioned in the module housing).

Nonetheless, it is suggested in the trigger mechanism art to make a component-mounting pin <u>hollow</u> that also functions as a <u>bolt</u>.  More specifically, Bielfeldt suggests, to one of ordinary skill in the art, to pivotally mount a trigger sear (indicated with the number 21) on a "fixed pin or bolt 27" (see col. 3, lines 52-55), and Bielfeldt's  Figure 1 tends to show that this fixed pin or bolt 27 is hollow.  The trigger mechanism includes components 12, 21, 30 located between housing plates (see col. 3, lines 20-23).  The description of the mounting element 27 as a "bolt" implies that the element may at least connect the trigger sear (pivotally) to one of the housing plates 10.  Moreover, the term "bolt" would tend to suggest that the connection is made by extending it into or through an opening.  The term would thus suggest to the artisan that a bolt 27 is mounted <u>in</u> an opening in at least one housing plate 10 (in the Examiner's opinion).

Moreover, the sear in Bielfeldt is disclosed as being pivotally mounted at one end, and Figures 1 and 2 show the sear being overlapped with one of the housing

plates. Thus, the Examiner has not found the argument in the October 16, 2014 Declaration of Charles Olsen, presented by Patent Owner, to be persuasive which has argued that the sear in Bielfeldt is not described as being mounted to a housing plate (paragraph 9), because the artisan would understand from Bielfeldt that the pivotal mounting of the sear is *to a housing plate* via the bolt.

Requester has cited judicial support for considering that combining "familiar elements according to known methods is likely to be obvious when it does not yield more than predictable results, and that altering the prior art by the mere substitution of one known element in place of another in the field, yields no more than a predictable result (see 9/8/14 Request for Reexamination, p 31). Based on this argument, Requester has argued that substituting the pin or bolt (27) of Bielfeldt for the unnumbered sleeve of Jewell would yield the predictable result of permitting removal the entire trigger assembly (10) of Jewell from the firearm, while managing to retain the arm lock means (20) in a pivotally mounted relationship with the housing (26) even after removal of the pin (30).

Requester has additionally argued that one of ordinary skill in the art would be motivated to replace such a sleeve of Jewell with the "pin or bolt 27" of Bielfeldt, which pivotally mounts a similar component to a similar housing, so as to retain Jewell's arm lock means (20), the spring (36) and the block (62) (and, possibly, other components) in their assembled order within the housing (26) even after the assembly has been removed from the firearm.

The Examiner agrees. Thus, for these reasons as argued by Requester, it would have been obvious to one of ordinary skill in the art, in view of Bielfeldt, to have replaced the unnumbered sleeve of Jewell with a hollow bolt and, moreover because the replaced hollow element constitutes a bolt, to have connected it (the bolt) to the opening in the housing's (26) plate.

Additionally, Jewell fails to disclose that the lower extremity of its module housing is located above the lowermost edges of the first and second receiver side walls of the shown firearm's trigger group receiving area.

Application/Control Number: 90/013,341                                                Page 15
Art Unit: 3993

Nonetheless, Biller suggests such a feature in relation to a firearm.  As argued by Requester (see 9/8/2014 Request, p 32):

> *Biller discloses a trigger module (14 – Fig. 2) that has been received in a housing (12) having a lower edge (within the trigger guard). As shown in Figure 1, even the lowest point of the module walls does not protrude below the housing lower edge, which demonstrates that essentially all the lower edge of the module is above the level of the housing edge. Modifying Jewell to slightly raise the level of the lower edge of the module would have been motivated by a desire to provide added clearance to ensure against unwanted protrusion of the module housing into trigger guard area, for example, due to manufacturing tolerances.*

The Examiner agrees.  Biller's positioning and shape of triggering module 14 relative to the edge of its grip housing 12 in the vicinity of the trigger would suggest a desire in Biller to have the lowest portions of the triggering module be above a lowermost edge of the grip housing, so as to avoid protrusion of the triggering module.

Moreover, the reference of Walker teaches a position for a module housing/trigger housing 4 in a bolt-type rifle wherein the lowermost extremity of the housing is above the lowermost edge of the cavity that receives the housing (see Fig. 1).  One would appreciate from the structure shown in Walker that such a relative position of the housing produces a benefit of reducing obstruction to a trigger's access by the user.

Accordingly, for the reasons as argued by Requester regarding Biller and as indicated herein regarding Walker, it would have been obvious to one of ordinary skill in the art in view of Biller and Walker to modify Jewell for making the position of the module housing in Jewell so that its lowermost extremity will be above the lowermost edges of the side walls of the firearm, for reducing obstruction to the trigger by unwanted protrusion of the module housing.

Accordingly, claim 5 is unpatentable over Jewell in view of Bielfeldt, Biller and Walker.

**(Claim 6)**

The limitations in claim 6 essentially call for (1) there to be second pin receptacle openings in the first and second receiver side walls and for the second pin receptacle

openings to define pin support surfaces, and (2) there to be a second pin receiver in the module housing that is aligned with the second pin receptacle openings.  Jewell fails to include these features because it describes supporting the module housing 26 with only one of the pins 30 (and a lip; see col. 7, lines 2-7).  Thus, Jewell only discloses one pin receiver (defined by openings in the walls in the housing for the pin 30) being aligned with pin receptacle openings of the firearm side walls (as seen in Fig. 2) and thus not a second pin receiver that is aligned with second pin receptacle openings in the firearm side walls.

However, regarding a firearm having a bolt (3), the reference of Walker teaches to connect a trigger component/module housing (4) in the receiver of a firearm with a pair of pins (14, 15) (see col. 2, lines 37-43) which are also used for pivotal support of trigger group components.  Walker therefore essentially teaches, in addition to having a first pin receiver (for pin 14) in a module housing being aligned with a first connecting location in a firearm's receiver, to additionally provide a second pin receiver (for pin 15) in the module housing, which is aligned with a second connecting location in the firearm.  Accordingly, one of ordinary skill would readily appreciate from Walker's teaching that Jewell could be modified *(1)* to have the second of Jewell's pins 30 be modified and used for connecting the module housing 26 in the firearm, *(2)* to further provide second pin receptacles in the side walls in Jewell's rifle 12, and *(3)* to have the second pin receptacles be aligned with the second pin receiver that receives the second pin 30 (shown in Figs. 1 and 4).  Achievement of a sturdier installment of the module housing in the stock would constitute a benefit that is achieved from using such a dual connection.  Therefore, it would have been obvious to one of ordinary skill in the art to modify Jewell in view of Walker to provide a result that includes a second pin receiver in the module housing 26 being aligned with second pin receptacles openings in the firearm's side walls.

**(Claim 8)**

Although the safety mechanism 28 in Jewell is mounted to its module 26, Biller further demonstrates that it is within the ordinary skill in the art to instead mount a safety (40, including operator knob 71, pawl 52 and shaft 70 etc.) to a firearm receiver's side

walls and to do this even when the firearm's trigger assembly is included within a
module housing (frame 43, walls 46, 47) in a firearm (spear gun). Accordingly, it would
have been obvious to one of ordinary skill in the art in view of Biller to modify the safety
mechanism of Jewell so that it would also be accessibly mounted to one of the firearm's
side walls and thus to the receiver for the trigger assembly.

**(Claim 9)**

The Walker reference demonstrates where a receiver (1) would be that houses
the bolt. This would apparently be the type of feature referred to by Jewell when it
refers to a receiver (see col. 3, lines 65-68). However, as indicated above, the term
"receiver" in this reexamination prosecution is interpreted to be *the part of a firearm that
houses the operating parts*. This means that the portions of the firearm of Jewell having
therein the bolt and the trigger group define the receiver. The upper portion for the bolt
in Jewell can be considered as the upper receiver, and the lower portion for the trigger
group can be considered as the lower receiver. Accordingly, the limitation in claim 9 per
se either is met by Jewell (of the art combination) or further obvious in view of Walker.
Claim 9 therefore does not distinguish the claimed subject matter relative the applied art
combination being applied to independent claim 5.


PATENTABLE SUBJECT MATTER

Claims 3, 7 and 11-15 are allowable.

<u>Claim 3</u>

Regarding a trigger group module having (inter alia) a module housing, trigger group
components mounted within the module housing, a first module pin supporting one of
the trigger group components and being mounted in a first pin receiver in the module
housing, and a second module pin supporting another of the trigger group components
and being mounted in a second pin receiver in the module housing, *the prior art of
record in the reexamination proceeding and cited on the reexamined patent fails to
disclose or fairly suggest* each of the pins including an opening which would align with

pin receptacle openings of a firearm when the trigger group module is in an operating position in the firearm.

Claim 7

Regarding a firearm having (inter alia) a module housing in a trigger group receiving area, trigger group components mounted within the module housing, a first module pin supporting one of the trigger group components and being mounted in a first pin receiver in the module housing, and a second module pin supporting another of the trigger group components and being mounted in a second pin receiver in the module housing, *the prior art of record in the reexamination proceeding and cited on the reexamined patent fails to disclose or fairly suggest* each of the pins including an opening in alignment with pin receptacle openings formed in the side walls of the firearm.

Claims 12-14

Regarding a trigger group module having (inter alia) a module housing, trigger group components mounted within the module housing, a first module pin supporting one of the trigger group components and being mounted in a first pin receiver in the module housing, and a second module pin supporting another of the trigger group components and being mounted in a second pin receiver in the module housing, *the prior art of record in the reexamination proceeding and cited on the reexamined patent fails to disclose or fairly suggest* each of the module pins including a pin opening that aligns with pin receptacle openings of a firearm when the trigger group module is in an operating position in the firearm, and wherein retainer pins extend through the pin openings of the module pins and through the pin receptacle openings of the firearm.

PRIOR ART

Jewell (US 4,671,005) discloses multiple pins (pins 30) that do not have openings, and an unnumbered sleeve that receives one of the pins and is for mounting the arm locking means 20 in a module (26).  Even if a sleeve can be considered to define a pin with an opening, Jewell fails to disclose more than one sleeve supporting a trigger group component that is mounted within the housing, and through which a

Application/Control Number: 90/013,341                                      Page 19
Art Unit: 3993

retainer pin (i.e., a pin 30) is received.  Moreover, Jewell fails to disclose having multiple
retainer pins (pins 30) that extends through the pin receptacle openings of the fire arm.

Bielfeldt's (US 3,707,796) *(1)* disclosure of a pin or bolt (27) that is shown to have
a central opening and to pivotally mount a trigger sear (21) (which would apparently
operate like Jewell's arm lock means), and *(2)* showing of other annular features (in the
Figure), is insufficient to suggest modifications to Jewell that will result in having multiple
trigger components be supported by hollow pins that are mounted in pin receivers of the
module housing and have retainer pins extend therethrough.

Walker (US 2,514,981) teaches to use two non-hollow cross-pins (14, 15) for
fastening a trigger housing (4) within the trigger compartment of a firearm.  One of the
pins supports a trigger component (sear 16) within the housing.  Nonetheless, the other
pin (15) pivotally supports a component (a bolt stop 51) that is shown as having a
location not within the housing (see Fig. 4).  Moreover, Walker does not teach
supporting multiple trigger components on hollow pins that receive the cross pins.
Walker is therefore insufficient to teach providing provide what is missing in Jewell and
Bielfeldt relative to the claimed subject matter.

Biller (US 5,904,132) teaches to use non-hollow pins to mount components in a
trigger housing and to use non-hollow pins for mounting the housing within the firearm.
Biller does not teach supporting trigger components within the housing on hollow pins
and therefore would not suggest the subject matter that is missing in Jewell, Bielfeldt
and Walker.


Claim 11

Regarding a trigger group module as recited, *the prior art of record in the reexamination
proceeding and cited on the reexamined patent fails to disclose or fairly suggest*
a hammer being mounted on a first module pin that has ends mounted in first pin
receiver openings in first and second module walls and that has an opening
therethrough aligned with the first pin receiver openings; and a trigger being mounted
on a second module pin that has ends mounted in second pin receiver openings in the

first and second module walls and that has an opening therethrough aligned with the second pin receiver openings.

<u>Claim 15</u>

Regarding a trigger group module as recited and in an AR-15 rifle, *the prior art of record in the reexamination proceeding and cited on the reexamined patent fails to disclose or fairly suggest*

a hammer being mounted on a first module pin that has ends located in first pin receiver openings in first and second module walls and that has an opening therethrough aligned with the first pin receiver openings and with first receptacle openings in side walls of the firearm frame; a first retainer pin being inserted in the first pin receiver openings and the first pin receptacle openings; a trigger being mounted on a second module pin that has ends located in second pin receiver openings in the first and second module walls and that has an opening therethrough aligned with the second pin receiver openings and with second receptacle openings in the side walls of the rifle frame; and a second retainer pin inserted into the second pin receiver openings and the second pin receptacle openings.

Jewell discloses multiple pins 30 that do not have openings, and an unnumbered sleeve that receives one of the pins and is for mounting the arm locking means 20 in a module (26).  Even if a sleeve can be considered to define a pin with an opening, Jewell fails to disclose more than one sleeve or having a hammer and trigger be supported on first and second sleeves (i.e., pins having openings).

Bielfeldt's *(1)* disclosure of a pin or bolt (27) that is shown to have a central opening, with the pin/bolt pivotally mounting a trigger sear (21) (which would apparently operate like Jewell's arm lock means), and *(2)* showing of other annular features, is insufficient to suggest a modification to Jewell that will result in having a hammer and trigger be supported by hollow pins that are mounted in pin receiver openings in the module housing.

Walker (US 2,518,981) teaches to use two non-hollow cross-pins (14, 15) for fastening a trigger housing (4) within the trigger compartment of a firearm.  The pins

Application/Control Number: 90/013,341                                    Page 21
Art Unit: 3993

also pivotally support trigger components.  Walker does not teach supporting a trigger
and hammer on hollow pins.  Walker therefore fails to provide what is missing in Jewell
and Bielfeldt.

Biller (US 5,904,132) teaches to use non-hollow pins to mount components in a
trigger housing and to mount a housing within the firearm.  Biller does not teach
supporting a trigger and hammer on hollow pins and would not suggest the subject
matter that is missing in Jewell, Bielfeldt and Walker .


### Consideration of Most Recent Declaration Submitted In Support of Swearing Behind U.S. Patent No. 7,421,937 to Gangl et al (Gangl)

The July 22, 2015 Declaration by Jack R. Biegel submitted under 37 CFR 1.132
in support of patentee's earlier filed Declaration submitted under 37 CFR 1.131, has
furnished ample evidence that the claimed invention was *reduced to practice* on behalf
of patentee (Michael L. McCormick) prior to the earliest reference date of Gangl.
Therefore, Gangl no longer qualifies as prior art in relation to the patent under
reexamination.


### Response to Arguments of Patent Owner

5)      Beyond swearing behind the reference Gangl, all arguments made on behalf of
Patent Owner in relation to the prior rejections of claims 3, 7, and 11-15 are moot in
view of the claims being found allowable.  Nonetheless, with regard to an opening in a
module pin, the Examiner continues to maintain an interpretation of the term "opening"
contrary to the position by Patent Owner, and to consider that the term is broad enough
to cover even openings that do not extend fully through the module pin (unless, of
course, wording sets forth such a detail (as is done in claim 11)).  Patent Owner has
correctly argued that a patentee may be his own lexicographer.  However, to restrict the
meaning of a term to a special meaning generally requires some form of express

statement in the patent indicating that this is the case.  Regarding the term "opening"
there was no statement in the earlier patent (US 6,722,072) that restricts the term to a
special meaning.


6)      Applicant's arguments filed July 22, 2015 in relation to adapting Jewell for a
semiautomatic rifle, have been considered.  The Examiner continues to consider that it
would have been obvious from Jewell's teaching of employing a module housing for a
trigger group in a rifle to have provided (with modification) an installable module housing
for the trigger group components of any firearm, including a semiautomatic rifle.
Jewell's teaching of the benefit of allowing quick removal of the trigger assembly would
be relevant as a benefit in other firearms.  Nonetheless, regarding the present
rejections, the issue appears to be one that is moot since there is no requirement,
regarding the *rejected* claims, that *the module feature* be in a semiautomatic rifle.  That
is, there is no requirement in any of the rejected claims 2, 4, 5, 6, 8 and 9 for the feature
of a semiautomatic rifle.


7)      As for the argument of July 22, 2015 that Jewell fails to include upper and lower
receivers, this argument is found unpersuasive.  The term "receiver" typically refers to
any part of the firearm that holds the operating components (e.g., the trigger, safety,
sear, bolt, hammer, etc.).  The operating components would include those of the trigger
group.  Regarding a receiver that would hold trigger group components, the patent
under reexamination discloses such a receiver (50).  In bolt-type rifles a receiver is often
the term for a sleeve within which the bolt rides (see U.S. Patent No. 2,514,981 to
Walker).  Thus, the un-shown portion around the bolt in Jewell is  likely what Jewell
refers to when it mentions a "receiver" (see col. 3, lines 65-68).  Nonetheless, the
portion housing the trigger group also qualifies as a receiver.  Accordingly, contrary to
Patent Owner's argument, Jewell is found to include upper and lower receivers.

Application/Control Number: 90/013,341                                    Page 23
Art Unit: 3993

## *Conclusion*

This is a **non**-final Office action because it newly considers US 2,514,981 to
Walker against unamended claims and also because it changes the rationale for
combining the art for certain claims.

In order to ensure full consideration of any amendments, affidavits or
declarations, or other documents as evidence of patentability, such documents must be
submitted in response to this Office action. Submissions after the next Office action,
which is intended to be a final action, will be governed by the requirements of 37 CFR
1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

The patent owner is reminded of the continuing responsibility under 37 CFR
1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent
proceeding, involving the reexamined patent throughout the course of this
reexamination proceeding. See MPEP §§ 2207, 2282 and 2286. The third party
requester is also reminded of the ability to similarly apprise the Office of any such
activity or proceeding throughout the course of this reexamination proceeding. See
MPEP §§ 2207, 2282 and 2286.

All correspondence relating to this *ex parte* reexamination proceeding should be
directed as follows:

By EFS:        Registered users may submit via the electronic filing system, EFS-Web, at:
               https://efs.uspto.gov/efile/myportal/efs-registered

By Mail:       Mail Stop *Ex Parte* Reexam
               ATTN: Central Reexamination Unit
               Commissioner for Patents
               U.S. Patent & Trademark Office
               P.O. Box 1450
               Alexandria, VA 22313-1450

By FAX:        (571) 273-9900
               Central Reexamination Unit

Application/Control Number: 90/013,341                                    Page 24
Art Unit: 3993

By hand:        Customer Service Window
                Randolph Building
                401 Dulany St.
                Alexandria, VA 22314
For EFS-Web transmissions, 37 CFR 1.8(a)(1) (i)(C) and (ii) states that correspondence (except
for a request for reexamination and a corrected or replacement request for reexamination) will be
considered timely filed if: (a) it is transmitted via the Office's electronic filing system in accordance with 37
CFR 1.6(a)(4); and, (b) includes a certificate of transmission for each piece of correspondence stating the
date of transmission, which is prior to the expiration of the set period of time in the Office action.

      Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central
Reexamination Unit (CRU) at telephone number: (571) 272-7705.  The fax number of the CRU is: (571)
273-9900.


signed

/Jimmy G. Foster/
Jimmy G. Foster
Primary Examiner
Central Reexamination Unit 3993


conf.:  /RMF/ and /GAS/

| *Notice of References Cited* | Application/Control No. 90/013,341 | Applicant(s)/Patent Under Reexamination 7293385 | |
|---|---|---|---|
| | Examiner JIMMY G. FOSTER | Art Unit 3993 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-2,514,981 A | 07-1950 | WALKER MERLE H | F41A17/32 | 42/69.02 |
| | B | US- | | | | |
| | C | US- | | | | |
| | D | US- | | | | |
| | E | US- | | | | |
| | F | US- | | | | |
| | G | US- | | | | |
| | H | US- | | | | |
| | I | US- | | | | |
| | J | US- | | | | |
| | K | US- | | | | |
| | L | US- | | | | |
| | M | US- | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.